UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DARRION O. FOOTE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| SWEDISHAMERICAN HOSPITAL – PRESIDENT/CEO? Official Capacity, DENNY ECCLES, Individually and Official Capacity, MICHAEL J. CASNER MD, Individually and Official Capacity, HEATHER R. FREY NP., Individually and Official Capacity, SCOTT G. FRENCH MD., Individually and Official Capacity, CRUSADER COMMUNITY HEALTH – LYNN YONTZ APN., Individually and Official Capacity, ARVIN SILVA MD., | ) ) ) ) ) ) ) ) ) No. 11 cv 50150 |
| Defendants. | ) |

## MOTION TO DISMISS

NOW COMES, the Defendants, SWEDISHAMERICAN HOSPITAL, it's PRESIDENT/ CEO and DENNY ECCLES, by and through their attorneys, FAULKNER LAW FIRM, LLC, and for their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), state as follows:

*Overview*

Plaintiff's medical malpractice action alleging a failure to diagnose and a failure to control infectious agents fails to meet a rudimentary requirement -- he fails to attach a 2-622 certificate and report from a reviewing healthcare provider stating a meritorious cause exists for filing of this matter. The Federal Courts, including the Seventh Circuit in *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000), recognize that the certification and report requirements of 735 ILCS 5/2-622 to be substantive law that must be satisfied in a federal action.

## *Particulars*

1. The filing of a Motion to Dismiss is proper where a party is challenging the failure to comply with Section 2-622. *Carter v. Finley* No. 01 C 50468, (N.D. Ill. Sept. 23, 2003) (citing *Sherrod v. Lingle*, 223 F.3d 605, 613-14 (7th Cir. 2000)).

2. In a medical malpractice action, Illinois Statute 735 ILCS 5/2-622 requires Plaintiff to attach a certification and report from a reviewing health professional who has determined that the action has merit. Specifically, Section 2-622(a)(1) provides that the plaintiff "shall file an affidavit....declaring:" :

   > that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action....a copy of the written report....must be attached to the affidavit."

   735 ILCS 5/2-622(a)(1)(West 2008). The "failure of the plaintiff to file an affidavit and report in compliance with this Section shall be grounds for dismissal under Section 2-619." 735 ILCS 5/2-622(a)(1)(West 2008). The statute was "designed to reduce the number of frivolous medical malpractice lawsuits at an early stage before litigation expenses mount." *Sullivan v. Edward Hosp.*, 209 Ill.2d 100, 117 (Ill. 2004). The Federal courts recognize that when a party is challenging the failure to comply with Section 2-622, the filing of a Motion to Dismiss is proper. *Carter v. Finley* No. 01 C 50468, (N.D. Ill. Sept. 23, 2003).

3. Federal courts have recognized that 735 ILCS 5/2-622 to be substantive law which applies to medical malpractice claims filed in federal courts in Illinois, and therefore requires compliance with the statute in such cases arising under Illinois law. *Hahn v.*

*Walsh*, 686 F. Supp. 2d 829, 832 (C.D. Ill. 2010); *Maldonado v. Sinai Medical Group, Inc.*, No. 06 C 4149 (N.D. Ill. Jan. 16, 2008). See also *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).

    4. Plaintiff's complaint, in challenging the timeliness of the diagnosis and treatment (incorrectly diagnosing hives and failing to give appropriate medications) and the sterile procedures employed at the Hospital, does allege "healing art malpractice." See Plaintiff's Complaint (Exhibit A) and Merfeld Affidavit (Exhibit B). *See also, Woodard v. Krans*, 234 Ill. App. 3d 690, 706 (2d Dist.1992) ["by their very character hospitals provide unusual if not unique problems regarding the spread of infectious diseases" and "…the question of what measures should reasonably be taken to control the spread of diseases within the hospital setting is one necessarily involving medical judgment and that the standard of care is not simply a matter of lay knowledge"].

    5. Plaintiff's complaint, as is clear on its face, fails to provide the certification and physician report required by 2-622.

WHEREFORE, Defendants SWEDISHAMERICAN HOSPITAL PRESIDENT/ CEO, SWEDISHAMERICAN HOSPITAL and DENNY ECCLES move this Court to enter an order dismissing Plaintiff's Complaint with prejudice pursuant to 735 ILCS 5/2-622 and Federal Rule of Civil Procedure 12(b)(6), and for any other relief this Court deems just.

BY: _____
FAULKNER LAW FIRM, LLC
David P. Faulkner

## PROOF OF SERVICE

The undersigned hereby certifies that on July 12, 2011, the Defendant, SwedishAmerican Hospital's Motion to Dismiss was served upon all Filing Users pursuant to General Order on Electronic Case Filing and upon all Non-Filing user parties pursuant to L.R. 5.5

TO:

Darrion O. Foote
511 North Church St., #809
Rockford, IL 61103

*Kelly Lafontaine*

Subscribed and sworn to before me the above mentioned date.

*Karen L Lang*
Notary Public

"OFFICIAL SEAL"
KAREN L. LANG
Notary Public, State of Illinois
My Commission Expires 01/26/2014

# STATE OF ILLINOIS
## IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
### WINNEBAGO COUNTY

CC-45

Darrion O Foote
Plaintiff

vs. (Swedish American Hospital)

Denny Eccles
1401 E. State Street
Rockford, IL 61104
Defendant

No. 11-1-114

## SUMMONS

To each defendant:

You are summoned and required to file an answer in this case, or otherwise file your appearance in the Office of the Clerk of this Court _____Winnebago County Courthouse_____ building, room_____.
__400 W. State Street,   Rockford_____, Illinois, within 30 days after service of this summons,
(Address)           (City)
not counting the day of service. IF YOU FAIL TO DO SO, A JUDGEMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS March 31, 2011 (Year)

(Seal of Court)

Thomas A. Klein
(Clerk of the Circuit Court)

By: _____ (Deputy)

(Plaintiff's Attorney or Plaintiff if he is not represented by an Attorney)
Name __Darrion Foote__
Attorney for __Pro Se'__
Address __511 N. Church St # 805__
City __Rockford__
Telephone __(815) 980-0865__

Exhibit A

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT

COUNTY OF WINNEBAGO

FILED Date: 3/31/11

DARRION O FOOTE,

PLAINTIFF,

VS,

CASE NO: 11 L 114

SWEDISH AMERICAN HOSPITAL- PRESIDENT/CEO ?
Official Capacity, DENNY ECCLES, Individuallly and Official capacity,

,MICHAEL J. CASNER MD., Individually and Official Capacity,

HEATHER R. FREY NP., Individually and Official Capacity,

SCOTT G. FRENCH MD., Individually and Official Capacity,

CRUSADER COMMUNITY HEALTH-LYNN YONTZ APN.,Individually

and Official Capacity,ARVIN SILVA MD.,

COMPLAINT

NOW COMES THE PLAINTIFF, DARRION O FOOTE, ACTING PRO-SE' AND BRINGS THIS ACTION FOR VIOLATIONS OF THE UNITED STATES CONSTITUTION PURSUANT TO ILLINOIS CODE OF CIVIL PROCEDURE AND SUPPORT THEREOF IT IS STATED AS FOLLOWS:

1. THE PLAINTIFF AT ALL TIMES MATERIAL HEREIN WAS/IS A CITIZEN OF THE UNITED STATES OF AMERICA AND A LIFELONG RESIDENT OF THE STATE OF ILLINOIS..

2. THE DEFENDANT, DENNY ECCLES, AT ALL TIMES MATERIAL TO THE COMPLAINT WAS SUPERVISOR OF ENVIROMENTAL SERVICES EMPLOYED BY SWEDISH AMERICAN HOSPITAL ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT AND UNDER THE COLOR OF LAW..

3. THE DEFENDANT, MD. MICHAEL J. CASNER, AT ALL TIMES MATERIAL TO THE COMPLAINT WAS A MEDICAL DOCTOR EMPLOYED BY SWEDISH AMERICAN HOSPITAL ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT AND UNDER THE COLOR OF LAW..

4. THE DEFENDANT MD. SCOTT G. FRENCH, AT ALL TIMES MATERIAL TO THE COMPLAINT WAS A MEDICAL DOCTOR EMPLOYED BY SWEDISH AMERICAN HOSPITAL ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT AND UNDER THE COLOR OF LAW..

5. THE DEFENDANT ,NP. LYNN YONTZ, AT ALL TIMES MATERIAL TO THE COMPLAINT WAS A NURSE PRACTICTIONER EMPLOYED BY SWEDISH AMERICAN HOSPITAL ACTING WITHIN THE SCOPE OF HER EMPLOYMENT AND UNDER THE COLOR OF LAW..

6. THE DEFENDANT, MD. ARVIN SILVA, AT ALL TIMES MATERIAL TO THE COMPLAINT WAS A MEDICAL DOCTOR EMPLOYED BY SWEDISH AMERICAN HOSPITAL ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT AND UNDER THE COLOR OF LAW..

7. THE DEFENDANT ,NP. HEATHER R. FREY, AT ALL TIMES MATERIAL TO THE COMPLAINT WAS A NURSE PRACTICTIONER EMPLOYED BY SWEDISH AMERICAN HOSPITAL ACTING WITHIN THE SCOPE OF HER EMPLOYMENT AND UNDER THE COLOR OF LAW..

8. THE DEFENDANT SWEDISH AMERICAN HOSPITAL PRESIDENT/CEO ? AT ALL TIMES MATERIAL TO THE COMPLAINT WAS EMPLOTED BY SWEDISH AMERICAN HEALTH SYSTEM ACTING WITHIN THE SCOPE OF HIS/HER EMPLOYMENT AND UNDER THE COLOR OF LAW..

## COUNT 1

CLAIM AGAINST DEFENDANT(S): SWEDISH AMERICAN HOSPITAL, DENNY ECCLES, MICHAEL J. CASNER , SCOTT G. FRENCH,

9. THE PLAINTIFF REPEATS AND REALLEGES PARAGRAPHS 1 THROUGH 8 ABOVE AS IF FULLY SET FORTH HEREIN..

10. THAT ON OR ABOUT 09-24-2010, AT APPROXIMATELY 9:30 A.M., PLAINTIFF ENTERED THE EMERGENCY DEPARTMENT AT SWEDISH AMERICAN HOSPITAL , AT THE ADVICE OF CRUSADER CLINIC, DUE TO A VARIETY OF AILMENTS AND WAS ASSIGNED TO A ROOM ,ASKED TO DISROBE,PLACED IN A GOWN AND SUMMARILY ASKED TO LAY ON A BED..

11. THAT DURING SAID STAY IN THE E.R. DEPARTMENT PLAINTIFF WAS GIVEN A DOSAGE OF ATIVAN BY THE ATTENDING NURSE..

12. THAT SHORTLY UPON BEING DISCHARGED FROM THE E. R. DEPARTMENT AT OR ABOUT 6:00PM. PLAINTIFF BEGAN TO EXPERIENCE A BURNING UNCONTROLLABLE ITCH THROUGHOUT HIS ENTIRE BODY..

13. THAT ON OR ABOUT 09-25-2010 PLAINTIFF CONTACTED ASK A NURSE AT( 1-866-6 ASK –OSF)- A DIVISION OF SAINT ANTHONY MEDICAL CENTER IN REGARDS TO THE BURNING ITCH HE HAD BEGUN TO EXPERIENCE SINCE HIS TRIP TO THE E.R. AT SWEDISH AMERICAN HEALTH SYSTEM..

14. THAT DURING THE CONVERSATION WITH " ASK A NURSE" PLAINTIFF ADVISED THAT HE WAS NOT EXPERIENCING AN ITCH OF ANY KIND PRIOR TO ATTENDING THE E.R. DEPARTMENT AT SWEDISH

AMERICAN HOSPITAL AND THAT DURING HIS STAY THERE WAS GIVEN A DOSAGE OF ATIVAN AND A PRESCRIPTION FOR TRAMADOL THAT HE HAD YET TO FILL..

15. THAT DURING THE SAME CONVERSATION WITH " ASK A NURSE' PLAINTIFF WAS ADVISED THAT HE MAY BE HAVING AN ALLERGIC REACTION TO THE DOSAGE OF ATIVAN HE HAD RECEIVED WHILE IN THE E.R. OR MAY HAVE BEEN EXPOSED TO SCABIES AND OR BED BUGS AND THAT HE SHOULD IMMEDIATELY SEEK MEDICAL ATTENTION..

16. THAT PLAINTIFF, NOT HAVING MEDICAL INSURANCE ,HAD TO WAIT TO BE SEEN BY A DOCTOR, APNLYNN YONTZ, AT CRUSADER CLINIC ON 10-05-2010 ,WHO ATTRIBUTED HIS BURNING ITCH AND NOW REDDENING SKIN TO A NEGATIVE REACTION TO THE DOSE OF ATIVAN HE HAD BEEN GIVEN APPROXIMATELY ELEVEN DAYS EARLIER WHILE AT THE E.R.. OPTING NOT TO OFFER PLAINTIFF ANY KIND OF MEDICATION TO OFFSET HIS CONDITION..WHILE TOTALLY DIREGARDING HIS BELIEF THAT HE HAD SCABIES OR BED BUGS..

17. THAT ON OR ABOUT 10-10-2010 AT APPROXIMATELY 02:30 A.M. WITH PLAINTIFF'S CONDITION WORSENING HE AGAIN RETURNED TO THE E.R. DEPARTMENT AT SWEDISH AMERICAN HOSPITAL INQUIRING AS TO WETHER HE HAD BEEN EXPOSED TO SCABIES OR BED BUGS..

18. THAT DURING SAID TRIP TO THE E.R. ON 10-10-2010 PLAINTIFF WAS ADVISED BY THE ATTENDING PHYSICIAN THAT THE SEVERE REDDENING OF HIS SKIN AND BURNING ITCH THROUGHOUT HIS ENTIRE BODY WAS THE RESULT OF AN URTICARIAL(HIVES) RASH AND HE WAS GIVEN PRESCRIPTIONS FOR PREDNISONE AND BENADRYL ..

19. THAT ON 10-20-2010, WITH PLAINTIFF,S CONDITION NOT ABATING, HE AGAIN RETURNED TO CRUSADER CLINIC FOR A MEDICAL VISIT WITHN APN. LYNN YONTZ WHO THIS TIME ATTRIBUTED HIS SYMPTOMS OF URTICARIA(HIVES) AND ITCH TO COLD AND HEAT AND HINTED THAT IT MAY BE STRESS RELATED , AGAIN NOT OFFERING PLAINTIFF ANY KIND OF MEDICATION FOR RELIEF OF HIS CONDITION, WHILE AGAIN DISREGARDING HIS BELIEF THAT HE HAD SCABIES OR BED BUGS..

20. THAT ON OR ABOUT 11-02-2010 WITH PLAINTIFF' CONDITION WORSENING HE AGAIN RETURNED TO THE E.R. DEPARTMENT AT SWEDISH AMERICAN HOSPITAL AND THIS TIME INFORMED THAT HIS SYMPTONS WERE THE RESULT OF SCABIES AND HE WAS ISSUED A PRESCRIPTION FOR PERMETHRIN CREAM FOR TREATMENT..

21. THAT ON 11-09-2010 PLAINTIFF AGAIN RETURNED TO CRUSADER CLINIC FOR HIS CONDITION THIS TIME REQUESTING TO SEE A DIFFERENT DOCTOR.MD. ARVIN SILVA,WHOM HE INFORMED THAT WHILE THE PERMETHRIN CREAM HE WAS PRESCRIBED BY THE E.R. DEPARTMENT AT SWEDISH AMERICAN HOSPITAL FOR THE TREATMENT OF SCABIES HAD CALMED THE RASH HE WAS EXPERIENCING DOWN, THE BURNING ITCH HAD NOT ABATED AT ALL, WHILE STATING HIS BELIEF THAT HE MAY HAVE BEEN EXPOSED TO BED BUGS..

22. THAT DURING SAID MEDICAL VISIT WITH ARVIN SILVA AT CRUSADER CLINIC I WAS GIVEN A PRESCRIPTION FOR HYDROXYZINE TO COMBAT MY BURNING ITCH WHICH ULTIMATELY DID NOT OFFER ME ANY RELIEF FROM THE BURNING ITCH I STILL WAS EXPERIENCING..

23. THAT ON 11-30-2010 PLAINTIFF'S APARTMENT WAS INSPECTED BY ANDERSON PEST SOLUTIONS WHO DISCOVERED THAT PLAINTIFF'S APARTMENT WAS IN FACT INFESTED BY BED BUGS AND PLAINTIFF WAS THEREBY GIVEN INSTRUCTIONS ON HOW TO PREPARE FOR BED BUG SERVICE SCHEDULED FOR ABOUT 12-06-2010..

24. THAT PRIOR TO HIS HOME BEING TREATED FOR BED BUGS PLAINTIFF AGAIN RETURNED TO CRUSADER CLINICFOR A MEDICAL VISIT WITH MD. ARVIN SILVA ,ON 12-02-2010 INFORMING HIM THAT IT HAD NOW BEEN CONFIRMED THAT HE HAD BED BUGS,SEEKING SOME SORT OF MEDICINAL RELIEF FOR THE BURNING ITCH HE STILL WAS EXPERIENCING AND FOR THE NUMEROUS SORES ON HIS SKIN AS A RESULT OF THE BED BUG BITES. .

25. THAT IN SPITE OF THE SEVERITY OF PLAINTIFF'S CONDITION AS WELL AS NOW KNOWING THAT HIS HOME HAD YET TO BE TREATED FOR BED BUGS ,MD ARVIN SILVA REFUSED TO PRESCRIBE PLAINTIFF ANY MEDICATION FOR RELIEF..

26. THAT IN THE INTERIM PLAINTIFF HAD TO DELAY TWO SEPARATE JOB OPPORTUNITIES AS HE SOUGHT TO IDENTIFY THE CAUSE OF HIS CONDITION ..

27. PKLAINTIFF CONTENDS THAT DEFENDANT "SWEDISH AMERICAN HOSPITAL" HAS A DUTY AND OBLIGATION TO PROVIDE A SAFE AND HEALTHY ENVIROMENT FOR ALL OF IT'S PATIENTS AND AS A DIRECT RESULT OF ITS' FAILURE TO DO SO AT ALL TIMES MATERIAL HEREIN DEFENDANT ENDURED A MENTAL AND PHYSICAL NIGHTMARE FOR APPROXIMATELY THREE MONTHS AND NOW HAS PERMANENT SCARRING ALL OVER HIS UPPER AND LOWER TORSO..

28. PLAINTIFF CONTENDS THAT DEFENDANT DENNY ECCLES, AS SUPERVISOR OF ENVIROMENTAL SERVICES, WAS RESPONSIBLE FOR ENSURING THAT THE CONDITION OF EACH ROOM IN THE EMEGENCY DEPARTMENT BE CLEAN,SAFE AND FREE OF ANY HAZARDOUS MATERIAL PRIOR TO ANY PATIENT BEING ADMITTED TO AN ASSIGNED ROOM.

29. PLAINTIFF CONTENDS THAT AS A DIRECT RESULT OF DEFENDANT DENNY ECCLES FAILURE TO INSPECT ROOM 11 OF THE EMERGENCY DEPARTMENT, PRIOR TO PLAINTIFF BEING ASSIGNED SAID ROOM, FOR ANY HAZARDOUS OR FOREIGN WASTE LED TO PLAINTIFF CONTRACTING BED BUGS..

30. PLAINTIFF CONTENDS THAT AS A DIRECT RESULT OF DEFENDANT DENNY ECCLES FAILURE TO ENSURE SAFE CONDITIONS IN THE EMERGENCY DEPARTMENT OF SWEDISH HOSPITAL , HE NOT ONLY ENDURED A NIGHTMARE BY BEING BITTEN OVER 1,000 TIMES BY BED BUGS BUT NOW HAS PERMANENT SCARRING ALL OVER HIS ENTIRE BODY..

WHEREFORE THE PLAINTIFF, DARRION O FOOTE, DEMANDS JUDGEMENT AGAINST EACH OF THE DEFENDANTS FOR A SUM IN EXCESS TEN THOUSAND DOLLARS AND NO/100 ($10,000.00) FOR COMPENSATORY DAMAGES AND FOR A SUM IN EXCESS OF TEN THOUSAND DOLLARS AND NO/100

($10.000.00)_FOR PUNITIVE DAMAGES PLUS ANY POTENTIAL COST OF THIS SUIT AND ANY OTHER RELIEF THIS COURT DEEMS FAIR AND JUST..

## COUNT 2

CLAIM AGAINST DEFENDANTS :CRUSADER COMMUNITY HEALTH,LYNN YONTZ AND ARVIN SILVA

31. PLAINTIFF REPEATS AND REALLEGES PARAGRAPHS 1 THROUGH 30 ABOVE AS IF FULLY SET FORTH HEREIN..

32. PLAINTIFF CONTENDS THAT AS A DIRECT RESULT OF DEFENDANT LYNN YONTZ 'S FAILURE TO ATTEMPT TO IDENTIFY THE CAUSE OF HIS URTICARIA(HIVES) RASH AND BURNING ITCH HE ENDURED A PHYSICAL AND MENTAL NIGHTMARE FOR APPROXIMATELTY THREE MONTHS AND NOW HIS PERMENENT SCARRING ALL OVER HIS UPPER AND LOWER TORSO..

33. PLAINTIFF CONTENDS THAT AS A DIRECT RESULT OF DEFENDANT ARVIN SILVA'S FAILURE TO ATTEMPT TO IDENTIFY THE CAUSE OF HIS URTICARIA(HIVES) RASH AND BURNING ITCH AS WELL AS HIS REFUSAL TO PRESCRIBE ANY MEDICINAL CREAM TO COMBAT THE LESIONS ON PLAINTIFF'S BODY, HE ENDURED A PHYSICAL AND MENTAL NIGHTMARE FOR APPROXIMATELY THREE MONTHS AND NOW HAS PERMANETN SCARRING ALL OVER HIS UPPER AND LOWER TORSO..

WHEREFORE THE PLAINTIFF DEMANDS JUDGEMENT AGAINST EACH OF THE DEFENDANTS FOR A SUM IN EXCESS OF TEN THOUSAND DOLLARS AND NO/100($10,000.00) FOR COMPENSATORY DAMAGES AND FOR A SUMIN EXCESS OF TEN THOUSAND DOLLARS AND NO/100($10,000.00)FOR PUNITIVE DAMAGES PLUS ANY POTENTIAL COST OF THIS SUIT AND ANY OTHER RELIEF THIS COURT DEEMS FAIR AND JUST..

*[signature]*

DARRION O FOOTE
PRO-SE'

DARRION O FOOTE
511 N. CHURCH ST # 809
ROCKFORD,IL 61103
(815) 980-0865

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DARRION O. FOOTE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| SWEDISHAMERICAN HOSPITAL – PRESIDENT/CEO?) | No. 11 cv 50150 |
| Official Capacity, DENNY ECCLES, Individually and ) | |
| Official Capacity, MICHAEL J. CASNER MD, ) | |
| Individually and Official Capacity, HEATHER R. ) | |
| FREY NP., Individually and Official Capacity, SCOTT ) | |
| G. FRENCH MD., Individually and Official Capacity, ) | |
| CRUSADER COMMUNITY HEALTH – LYNN ) | |
| YONTZ APN., Individually and Official Capacity, ) | |
| ARVIN SILVA MD., ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT

I, Beverly Merfeld, RN, being duly sworn on oath, state the following based upon my own personal knowledge:

1. The following information is based upon my personal knowledge and if called upon as a witness, I could competently testify under oath to the matters contained herein.

2. I am the Director of Risk Management at SwedishAmerican Hospital, and also am a member of several quality assessment committees.

3. Matters of diagnosis and treatment of medical conditions at the Hospital necessarily involve application of specialized medical knowledge.

4. In matters of sterility and infection control, in Hospitals generally, and at SwedishAmerican Hospital specifically, Committees composed of physicians and nurses apply their specialized knowledge to formulate policies on providing a sterile and sanitary environment in the hospital setting, including emergency departments. These policies are directed at means of transmission of infectious organisms, including such means of transmission as bacteria, contact, and other sources, including insects. For example, The SwedishAmerican Health System Infection Control Committee (ICC) reviewed and authorized Policy No. 30.0201.0 (attached) to be included in the Hospital's Infection Control Manual, setting forth Polices/Procedures for "Cleaning – Routine and Terminal." Similarly, disinfectants

*Exhibit B*

used for cleaning, disinfecting and sterilizing and procedures are also approved by the ICC.

5. The SwedishAmerican Health System Infection Control Committee (ICC) is a medical staff committee, chaired by a physician, that collaborates with Infection Control Practitioners, who are baccalaureate or masters-prepared registered nurses nationally certified in Infection Control. The ICC includes members from the Infection Control Department, Microbiology, Pathology, and an Infectious Diseases Physician Consultant.

DATE: 7/12/11         BY: *Beverly Merfeld*
                          Beverly Merfeld

Subscribed and Sworn to before me this 12 day of July, 2011.

OFFICIAL SEAL
SUSAN ARNER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-19-2012

*Susan Arner*
Notary Public



**SwedishAmerican Health System**

**Infection Control Manual**

| SECTION | SUBJECT NO. |
|---|---|
| **Policies/Procedures** | **30.0201.0** |
| | EFFECTIVE DATE |
| | **01/27/2010** |
| SUBJECT | SUPERSEDES NO. |
| **Cleaning – Routine and Terminal** | IC Manual, Section III, same subject |
| | DATED |
| | 07/18/2008 |

### I. Purpose:
To provide consistent procedures for the routine and terminal cleaning of the hospital patient care environment and equipment, the same routine daily and terminal cleaning procedures used in other hospital rooms should be used to clean rooms of patients on *Transmission-Based Isolation Precautions*. Rooms will be cleaned according to Environmental Services policy.

### II. Rationale:
Although microorganisms may be present on walls, floors, and table tops in rooms used for patients on isolation, these environmental surfaces, unless visibly contaminated, are rarely associated with transmission of infections to others. In contrast, microorganisms on contaminated patient-care equipment are frequently associated with transmission of infections to other patients when such equipment is not appropriately decontaminated and reprocessed. Therefore, terminal cleaning should be directed toward those items that have been in direct contact with the patient or in contact with the patient's excretions, secretions, blood, or body fluids. Disinfectant-detergent solution used during terminal cleaning should be freshly prepared.

Disinfectants used for cleaning, disinfecting and sterilizing will be EPA and FDA approved products and **will be approved by the Infection Control Committee** for the designated use. All items are categorized into non-critical, semi-critical, and critical categories.

#### Categories of Items:
1. Non-Critical items are items that come in contact with intact skin; such as, bedpans, commodes, stethoscopes, BP cuffs, etc. Non-critical items can be wiped off with a disinfectant germicide that has been approved for cleaning environmental surfaces; such as bleach, Lysol, 70% isopropyl alcohol, and the quaternary ammonium germicide detergent solution that Environmental Services uses.

2. <u>Semi-critical items</u> are items that come in contact with mucous membranes and non-intact skin and require a higher level of disinfection; such as scopes that enter body cavities during respiratory and GI procedures, laryngoscope blades, etc.

   Semi-critical items can be disinfected using a high level disinfectant and soaked for the manufacturer's required soaking time, rinsed, dried, and stored to prevent contamination before reuse. Products must be used according to manufacturer's recommendations.

3. <u>Critical items</u> are items that enter sterile tissue or the vascular system; such as cardiac and urinary catheters, implants, surgical instruments and needles.
   (a). Most of the items in this category should be purchased as sterile or be sterilized by steam under pressure if possible. If heat-labile the object may be treated with ethylene oxide or a chemosterilizer. This includes 2% glutaraldehyde-based formulations that require extended soaking times of 7 hours or more.
   Steris-System method has also been approved for use in surgery (see Surgery and Surgical Specialty Area policies and procedures).
   (b). Appropriate cleaning of instruments prior to sterilization applies and is performed by the Sterile Processing Department or per department protocol.

## III. **Procedures:**

For routine and terminal cleaning, healthcare workers will wear appropriate personal protective equipment (PPE) to prevent exposure during these procedures. The exact type of PPE depends on the tasks being done, infectious or chemical agent, and anticipated duration of exposure. Healthcare workers should use the same precautions to protect themselves during terminal cleaning that they would use if the patient were still in the room. However, masks are not needed if they were indicated only for direct or close patient contact (e.g., *Droplet Isolation)*. See Environmental Services policies/procedures for details.

### A. **Routine Cleaning:**
1. Clean housekeeping surfaces (e.g., floors, tabletops) on a regular basis, when spills occur, and when these surfaces are visibly soiled.

2. Disinfect (or clean) environmental surfaces on a regular basis and when surfaces are visibly soiled.

3. Follow manufacturers' instructions for proper use of disinfecting (or detergent) products such as recommended use-dilution, material compatibility, storage, shelf-life, safe use, and disposal.

Cleaning – Routine and Terminal

4. Clean walls, blinds, and window curtains in patient care areas when these surfaces are visibly contaminated or soiled. Cubicle curtains should be changed if visibly soiled (*and on a routine scheduled basis – see Environmental Services policy)*..

5. Prepare disinfecting (or detergent) solutions as needed and replace these with fresh solution frequently (e.g., replace floor mopping solution every three patient rooms, change no less than at 60 minute intervals) according to facility policy. SAHS changes mop heads after each patient room cleaning.

6. If non-disposable mop heads/cleaning cloths are used, decontaminate regularly to prevent contamination (e.g., launder and dry daily). If disposable, discard after use.

7. Use a one-step process and an EPA–registered hospital disinfectant designed for housekeeping purposes in patient care areas where uncertainty exists about the presence or blood/body fluid contamination, or multidrug resistant organisms..

8. Detergent and water are adequate for cleaning surfaces in administrative offices and other similar non-patient care areas.

9. In patient care areas, wet-dust horizontal surfaces daily using clean cloths moistened with an EPA-registered hospital disinfectant (or detergent).

10. Disinfect non-critical surfaces with an EPA-registered hospital disinfectant according to the label's safety precautions and use directions.

11. Do not use disinfectants to clean infant bassinets and incubators while these items are occupied. See terminal cleaning.

**B. Terminal Cleaning:**
1. Isolation precaution signage must remain posted on patient's door/area until <u>after terminal cleaning is completed</u>.

2. Non-disposable items will be returned for decontamination and processing. Items that are contaminated with infective material will be bagged and labeled for identification before being sent for sterile processing.

3. Disposable items will be discarded in appropriate containers.

Cleaning – Routine and Terminal

4. Horizontal surfaces of furniture and mattress covers will be cleaned with a disinfectant-detergent solution. Adequate disinfection of bedside equipment and environmental surfaces (e.g. bedrails, bedside tables, carts, commodes, door knobs, faucets) is always indicated since pathogens can survive in the environment for prolonged periods of time.

5. Terminal cleaning of infant bassinets and incubators with phenolics is not recommended/acceptable.

6. Floors should be wet-vacuumed or mopped with a disinfectant-detergent solution according to Environmental Services policy.

7. Routine washing of walls, blinds, and curtains is not indicated; however, these should be washed if they are visible soiled. Cubicle curtains should be changed if visibly soiled (*and on a routine scheduled basis – see Environmental Services policy)..*

8. Disinfectant fogging is not recommended for routine terminal cleaning.

9. Airing a room from which a patient has been discharged is not an effective terminal disinfection procedure and is not necessary.

10. A settling period is required upon discharge of patients with *potential or confirmed diagnoses* requiring *Airborne Infection Isolation (AIIR)*. Doors will remain closed and appropriate precautions (See Table 3) followed according to patient's diagnosis for 60 minutes in designated negative pressure rooms or 5 hours* in a non-negative pressure inpatient hospital room. [Exceptions: ED Rooms 4, 7: Urgent Care Room, and Radiology Room 4 require 15 minutes settling time].

    (a). Contact Engineering for use of a portable HEPA machine to reduce settling time to approximately 1 hour.

    (b). Contact Infection Control with questions related to settling periods.

11. Immediately contact the SAHS Infection Control Department at pager 123 for questions relating to cleaning the room of a patient who has suspected smallpox, Lassa fever, Ebola fever, or other hemorrhagic fevers, such as Marburg disease. The Infection Control Department will contact the Illinois Department of Public

Cleaning – Routine and Terminal

Health, who will contact the Centers for Disease Control and Prevention.

Revised 12/00, 3.02, 10/02, 3/05, 3/08 3/09, 1/2010

**Reference:**

<u>Guideline for Disinfection and Sterilization in Healthcare Facilities, 2008,</u> Centers for Disease Control and Prevention, Infection Control Practices Advisory Committee (HICPAC).

Cleaning – Routine and Terminal